**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-CR-60078-AHS**

**UNITED STATES OF AMERICA**

> **v.**

**SUNSEEKER INTERNATIONAL**
**LIMITED and SUNSEEKER USA**
**SALES CO, INC.,**

> **Defendants.**

_____/

**DEFENDANTS' JOINT POSITION WITH RESPECT TO SENTENCING**
**FACTORS AND INCORPORATED SENTENCING MEMORANDUM**

Defendants Sunseeker International Limited ("SIL") and Sunseeker USA Sales Co, Inc. ("Sunseeker USA", collectively "Defendants"), by and through their undersigned counsel and pursuant to 18 U.S.C. § 3553(a), file this Position Statement with Respect to Sentencing Factors and incorporated Sentencing Memorandum. Defendants respectfully request this Honorable Court impose the sentence agreed upon in the Plea Agreement, entered May 11, 2026, imposing a $200,000 fine (already paid by Defendants); not more than five years of probation; and continued adherence to the Timber Compliance and Ethics Program (the "Compliance Plan") [D.E. 17].

Other than the objections and factual corrections set forth by Defendants in their respective Objections to Draft Presentence Investigation Report ("PSR") [D.E. 22/23], incorporated herein by reference, Defendants adopt the PSR. [D.E. 22/23][1].

---

[1] For ease of reference, where the facts are the same, Defendant cites to SIL's PSR only. [D.E. 22].

181561915.13

## I.      INTRODUCTION

On May 11, 2026, Defendants pled guilty to Counts One and Two of the Information, pursuant to the Plea Agreement entered that same day. [D.E. 17]. Those counts charged Defendants with misdemeanor violations of the Lacey Act, for *inter alia,* an offense involving approximately $20,400 of teak parts imported into the United States on two pleasure yachts, on or about April 2021 to February 2023, respectively. *See* 16 U.S.C. §§ 3372(a)(2)(B)(i) and 3373(d)(2).

### Procedural History

On January 13, 2022, a federal grand jury issued a subpoena to Sunseeker USA in connection with the government's investigation into teak imported into the United States originating from the country of Myanmar. [D.E. 22] ¶ 20; Factual Proffer Statement as to Sunseeker International Limited and Sunseeker USA Sales Co, Inc. ("Factual Proffer") [D.E. 18] ¶ 16. Upon receipt of the Subpoena, Defendants immediately began efforts to fully cooperate with the government's investigation. Defendants' cooperation efforts included, but are not limited to: (i) responding to the grand jury subpoena; (ii) entering into three consecutive tolling agreements permitting the suspension of the statute of limitations against Defendants while the Government's investigation was pending; (iii) producing documents on a rolling basis; (iv) voluntarily providing presentations, written submissions, factual disclosures, and legal analyses to assist the Government's evaluation of the relevant facts and applicable law; and (v) participating in multiple conferences, presentations, and meetings with the Department of Justice ("DOJ") representatives throughout the investigation, including a March 8, 2022, presentation, discussions with DOJ on May 13, 2022, a June 13, 2022 presentation, and numerous follow-up communications concerning the facts, legal issues, and potential resolution of this matter.

By September 2023, Defendants had collected, reviewed, and produced thousands of documents in response to the Subpoena, and interviewed current and former employees across multiple departments.

On June 30, 2026, Defendants paid the $200,000 statutory fine called for by the Plea Agreement. [D.E. 22] ¶ 48; Government's Omnibus Response, [D.E. 30] at 4. Defendants have implemented the Compliance Plan required as a condition of probation.

The agreed upon sentence is "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a). *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007). The Defendants have paid the fine, agreed to a probation period of not more than five years, and implemented a comprehensive compliance plan. The Defendants have gone even further in promoting the Lacey Act's purpose of preserving the environment by engaging in isotope testing of wood to ensure it is appropriately sourced. Such a sentence reasonably provides just punishment, protects the public, and promotes respect for the law. It also affords adequate deterrence and reflects the remedial steps Defendants have already taken, as required by 18 U.S.C. § 3553(a)(2). Defendants accept full responsibility for their actions. This statement is provided to address the critical mitigating facts and context of the circumstances resulting in the Plea Agreement.

This memorandum:

(1)     addresses the factors set out in 18 U.S.C. § 3553(a), which the Court must consider in determining the particular sentence to impose;

(2)     provides the Court with a brief history of the underlying regulatory conduct at issue, for context; and

(3)    explains why a sentence beyond the $200,000 statutory fine already paid, including the gain-based fine range set forth in the PSR, would be inconsistent with the Sentencing Guidelines and with 18 U.S.C. § 3553(a).

## II.    BOOKER AND 18 U.S.C. § 3553(a)

The decision of the United States Supreme Court in *Booker* rendered the United States Sentencing Guidelines "effectively advisory." *United States v. Booker*, 543 U.S. 220, 245 (2005). Pursuant to *Booker*, sentencing courts must consider the applicable guideline calculation. Courts may then tailor the sentence in light of the other statutory concerns set forth in 18 U.S.C. § 3553(a). *Id.*

As a result of *Booker*, district courts must consider the following factors in determining a sentence:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes of the defendant;

(3)    the kinds of sentences available;

(4)    the applicable Sentencing Guidelines range and pertinent policy statements;

(5)    the need to avoid unwarranted sentence disparities among similarly situated defendants; and

(6)    the need to provide restitution to any victim of the offense.

Section 3553(a)'s parsimony provision requires the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in § 3553(a)(2).

4

### III.   APPLYING THE FACTORS CONTAINED IN 18 U.S.C. § 3553(a)

Defendants do not seek a downward variance or departure from a properly calculated guideline range. Defendants' position instead reflects the correct application of the Sentencing Guidelines. As explained in Section D below, the fine ranges set forth in the PSR were calculated under guideline provisions that do not apply to this offense. The $200,000 fine, a probationary term of no more than five years, and the Compliance Plan the parties agreed upon reflect the Guidelines correctly applied. That sentence is also independently supported by the factors set forth in 18 U.S.C. § 3553(a), as set forth below.

**A.    The Nature and Circumstances of the Offense and the History and Characteristics of the Defendants (18 U.S.C. § 3553(a)(1))**

**1.    The Offense Conduct**

The following history is necessary to frame the context and bases for the Plea Agreement. SIL is a custom luxury yacht manufacturer located in Dorset, England. SIL was founded in 1969 by two brothers, Robert and John Braithwaite, under its initial name, Poole Power Boats. SIL was organized in the United Kingdom ("UK") and has always operated in England. The UK joined the European Union ("EU") in 1973 and correspondingly operated under EU laws and regulations until its exit (Brexit) and accompanying transition period, 48 years later, on December 31, 2020. [D.E. 22] ¶ 6; [D.E. 18] ¶ 3. After decades of operations as a member of the EU, SIL had to navigate significant legal changes and regulatory compliance across its business operations.

Sunseeker USA is presently, and during the relevant timeframe, SIL's United States distributor.

The violations in this case stem from a change in SIL's obligations under European Union Timber Regulations ("EUTR") that occurred as a result of Brexit. Prior to January 1, 2021, SIL's role was a "Trader" under the EUTR. [D.E. 18] ¶ 7. As a Trader, it bought and sold timber products,

but it did not place them on the EU market for the first time. *Id.* Traders were required only to keep records of purchases, resales, and suppliers. *Id.* Traders, including SIL prior to Brexit, were not required to maintain a due diligence system on the source of raw product, including wood. *Id.* Rather, due diligence obligations were required of "Operators" under the law. [D.E. 22] ¶ 12; [D.E. 18] ¶ 7.

On January 1, 2021, when the UK completed its departure from the EU, the relevant market changed from the EU to the UK. SIL was then transacting as an "Operator" because its timber purchases were placed on the UK market for the first time. [D.E. 18] ¶ 14. As an Operator, SIL became subject to additional due diligence obligations, including maintaining and evaluating a due diligence system and implementing procedures to regularly assess and mitigate supply-chain risk. At the same time, SIL retained its obligations as a Trader with respect to UK-sourced timber products, creating a dual regulatory framework under which SIL's obligations depended on the origin of the timber being procured.

Just weeks after SIL became an Operator, a military coup in Myanmar caused the UK and US to issue sanctions against the Myanmar Timber Enterprise, the sole authorized seller of export teak from Myanmar. [D.E. 22] ¶ 19; [D.E. 18] ¶ 15.

Prior to and following Brexit, and during the disruption and uncertainty created by the COVID-19 pandemic, SIL sought to understand evolving timber-regulation requirements through industry workshops and webinars, communications with suppliers, and consultations regarding EUTR compliance. SIL personnel attended British Marine regulatory workshops and sought additional transparency and due diligence information from suppliers regarding timber sourcing and compliance practices.

The conduct at issue in this case occurred between April 2021 and February 2023. [D.E. 17] ¶ 1. Although SIL took the above steps, and some suppliers claimed to have legally sourced teak, SIL did not formally implement a due diligence system in connection with its purchase of teak during this timeframe. [D.E. 22] ¶ 27; [D.E. 18] ¶¶ 19-21. As a result of that shortcoming, Defendants committed the misdemeanor Lacey Act violation to which they have pled guilty, and fully accept responsibility. Although the transition of regulatory functions as a result of Brexit converted SIL from a Trader to Operator, SIL acknowledges it was not fully prepared to perform the due diligence required as an Operator. However, by February 2023, SIL had adopted a policy precluding procurement or use of Myanmar teak in its vessels. [D.E. 22] ¶ 25; [D.E. 18] ¶ 22.

SIL's misstep led to a finding in the UK that SIL violated the United Kingdom Timber and Timber Products ("UKTR") between April 2021 and July 2022. [D.E. 22] ¶ 25; [D.E. 18] ¶¶ 23-24. The Crown Court imposed a penalty of £358,760.60 (approximately $410,000.00) on SIL. The Crown Court specifically credited SIL's early acknowledgment of guilt and remedial steps taken. [D.E. 22] ¶ 26; [D.E. 18] ¶ 25.

The offense at issue covers the imported Myanmar teak parts with an approximate value of $20,400. [D.E. 22] ¶¶ 22, 52; [D.E. 18] ¶ 27. These teak parts were components on two separate yachts, with a combined declared value of more than $4 million. Thus, the imported Myanmar teak parts represent just about 0.5 percent of the declared value of the yachts. Both Defendants are Title 16 misdemeanants. There are no identifiable victims. [D.E. 22] ¶ 28.

The scale of Defendants' conduct, when measured against the boating industry as whole, is a critical factor in sentencing. Teak has been a staple material in maritime construction for centuries and has long been utilized throughout the recreational boating industry for decking, flooring, furniture, and other exposed surfaces because of its durability, water resistance, stability,

and performance in harsh marine environments. *See* Florida Teak, Marine Teak Wood for Boats: Durable Yacht Flooring, https://floridateak.com/marine-teak-wood-for-boats. Among teak varieties, Burmese (Myanmar) teak was historically regarded as the premium benchmark within the marine industry because of its durability, dimensional stability, high natural oil content, and resistance to moisture and decay in marine environments. *Id.* Widely viewed as the highest-quality teak available for yacht construction and decking applications, Myanmar teak occupied a unique position within the maritime sector and became deeply embedded in longstanding industry practice among manufacturers of recreational vessels and luxury yachts worldwide. *Id.* Accordingly, the demand for teak was driven not only by consumer expectations, but also by its historical and widespread use throughout the marine industry. Against that backdrop, SIL's conduct occurred within a broader industry environment in which teak remains a commonly utilized material among yacht manufacturers worldwide, despite SIL undertaking efforts to identify and implement alternative materials.

The prevalence of teak in the marine marketplace is best understood in the context of the size and scope of the recreational boating industry itself. The National Marine Manufacturers Association reports that the U.S. recreational boating industry supports more than $230 billion in annual economic impact, more than 812,000 jobs, and more than 36,000 businesses nationwide. *See* National Marine Manufacturers Association, Recreational Boating, nmma.org/advocacy/economic-impact/recreational-boating. In 2025 alone, U.S. recreational marine retail spending totaled approximately $56 billion, and new powerboat retail unit sales totaled approximately 215,000 to 225,000 units. *See* National Marine Manufacturers Association, Recreational Boating, nmma.org/advocacy/economic-impact/recreational-boating; National

Marine Manufacturers Association, Mixed Economic Conditions Shape a Stable Start to 2026 for U.S. Recreational Boating Industry, https://www.nmma.org/statistics/article/25352, (Jan. 8, 2026).

Florida leads every state in this industry. Florida has generated more than $31 billion in annual economic impact, supported more than 109,000 jobs and more than 7,100 businesses, and has more than 1,004,000 registered boats, the most of any state in the country. *See* National Marine Manufacturers Association, Florida's 2023 Economic Impact Study of the Recreational Boating Industry.

SIL, presently, manufactures approximately 70-100 vessels annually, worldwide, from its facilities in Dorset, England. [D.E. 22] ¶ 36. That figure represents a small fraction of just the new powerboats retailed in the United States in a single year, without accounting for the other markets SIL serves internationally. SIL's and Sunseeker USA's sales represent a fraction of the sales in a historically vast industry.

To counsel's knowledge, this appears to be among the first cross-border case in which the Lacey Act's provisions governing finished timber products have been enforced against a recreational yacht manufacturer. This case represents a compliance lapse. SIL's swift remediation, described above, is consistent with the purpose the Government has articulated, to "ensure a level playing field for companies that follow the law" and to prevent timber trafficking, described as "a transnational crime that damages forests." *See* Press Release, U.S. Dep't of Justice, Luxury Yacht Companies Plead Guilty to Violating Lacey Act for Using Illegally Obtained Burmese Teak on Multimillion Dollar Yachts; Agree to Pay $200,000 Fine (May 13, 2026).

### 2.    **History and Characteristics of the Defendants**

Despite the market demand for teak, driven by its history and consumer demand in the luxury yacht market, beginning in 2011, SIL undertook efforts to incorporate sustainable teak

alternatives (composite/synthetic decking). It produced additional boats using synthetic teak decking in 2014 and 2017. In 2019, SIL phased out teak decking entirely on five separate boat models, including two models phased out before the conduct at issue in this case occurred in April 2021. SIL also attempted to adopt a synthetic alternative called Lignia. These efforts reflect a long-standing, good-faith trajectory away from teak, and predate any prosecution.

Since the conduct at issue, Defendants have taken substantial remedial steps. SIL adopted a policy that expressly prohibits the purchase of any Myanmar teak. Compliance Plan, [D.E. 35][2] § 4.5. SIL implemented the Compliance Plan, approved by its Board of Directors, with the Chief Operating Officer, Steve Timms, as the responsible Policy Owner. [D.E. 35] at 1; [D.E. 22] ¶ 40. The Compliance Plan places ultimate oversight with the Board of Directors and operational responsibility with the Executive Committee. [D.E. 35] § 3.1. It requires periodic employee training, supplier due diligence, and a minimum five-year recordkeeping period. [D.E. 35] §§ 4.3, 4.5.

SIL has engaged Envirosense Limited, an independent specialty organization, to conduct due diligence and risk assessment on all teak it purchases. [D.E. 35] § 4.1. SIL has also engaged Source Certain Operations UK Limited to conduct isotope testing on teak decking, verifying the species and region of origin against supplier documentation. *Id at* § 4.4. This isotope testing goes *beyond* what UK law requires. *Id.* The Compliance Plan further requires external, independent third-party audits in the first, third, and fifth year, and every three years thereafter. SIL maintains a confidential twenty-four hour whistleblower hotline with a non-retaliation policy. [D.E. 35] §§ 6.2, 6.3. The Compliance Plan and SIL's efforts serve the industry.

---

[2] The Compliance Plan referenced herein was filed under seal pursuant to the Court's Order [D.E. 31] granting Plaintiff's Motion to File Under Seal [D.E. 20], and remains subject to the confidentiality protections imposed by that Order.

SIL has paid the £358,760.60 penalty imposed by the UK Crown Court. [D.E. 22] ¶ 26. That penalty arose from a related lapse in due diligence on separate UK timber imports between April 2021 and July 2022, and not the same two yachts at issue in this case. [D.E. 22] ¶ 25; [D.E. 18] ¶¶ 23-24. The Defendants have paid the $200,000 statutory fine contemplated by the Plea Agreement in full. [D.E. 22] ¶ 48; Government's Omnibus Response, [D.E. 30] at 4.

**B.      The Need for the Sentence Imposed (18 U.S.C. § 3553(a)(2))**

### 1.      <u>Just Punishment</u>

The $200,000 statutory fine, already paid, reflects the seriousness of a Class A misdemeanor offense involving approximately $20,400 in unlawfully sourced wood. A fine calculated from the full declared value of the yachts, rather than the value of the teak itself, would be grossly disproportionate to the conduct at issue. Those reasons are set forth fully in Defendants' Objections to the PSR, incorporated herein by reference and, as discussed below, are consistent with the Government's analysis and position.

### 2.      <u>Deterrence</u>

Defendants' remedial measures already provide meaningful specific deterrence. These measures include the policy change, the Compliance Plan, the engagement of Envirosense and Source Certain, and the ongoing isotope testing. SIL has had no further Lacey Act or timber-regulation issues since adopting these measures in February 2023.

### 3.      <u>Protection of the Public</u>

This is a Title 16 offense with no identifiable victims. Defendants' compliance measures further reduce any risk of recurrence.

### 4.      Rehabilitation and Corrective Measures

The Compliance Plan is already implemented. It remains subject to ongoing supervision and third-party audit as a condition of probation. It is the appropriate vehicle for corrective measures in this case. No further financial penalty is necessary to achieve this purpose.

### C.      The Kinds of Sentences Available (18 U.S.C. § 3553(a)(3))

Pursuant to 18 U.S.C. § 3561(a) and (c)(2), Defendants are eligible for a term of probation not to exceed five years. The parties jointly recommended this term. They also recommended the special conditions set forth in the Plea Agreement, including implementation of the Compliance Plan and restrictions on future Myanmar teak imports absent adequate documentation.

### D.      The Sentencing Guidelines Range and Pertinent Policy Statements (18 U.S.C. § 3553(a)(4), (a)(5))

As set forth fully in Defendants' respective Objections to the Draft Presentence Investigation Report, both incorporated herein by reference, the organizational fine provisions in U.S.S.G. §§ 8C2.2 through 8C2.9 do not apply to this offense. The offense level was determined under § 2Q2.1, a Chapter Two, Part Q environmental guideline. Section 8C2.10, not §§ 8C2.2 through 8C2.9, governs the fine determination for this offense. Section 8C2.10 directs the Court to the factors set forth in 18 U.S.C. §§ 3553 and 3572, rather than to a mechanically generated guideline fine range.

The Government agrees. In its Omnibus Response to Defendants' Limited Objections to Draft Presentence Investigation Report, filed July 29, 2026, the Government confirmed that §8C1.1, et seq. of the Sentencing Guidelines does not apply in this case. [D.E. 30] at 2. The Government agreed that Probation's use of the § 8C2.4 organizational fine table was error, because violations under § 2Q2.1 are not included in the limited list of applicable offenses for that table. *Id.* at 2-3. The Government further agreed that the correct fine calculation comes from 18 U.S.C.

§ 3571(c)(5), consistent with the approach the court took in *United States v. BP Products North America, Inc.*, 610 F. Supp. 2d 655, 681 (S.D. Tex. 2009). *Id.* at 3. Section 3571(c)(5) establishes a fine of not more than $200,000 for an organization convicted of a Class A misdemeanor. *Id.*

The Government requested that this Court sustain Defendants' objections to the fine calculation and impose the $200,000 fine agreed upon by the parties, joint and several as to both Defendants, pursuant to 18 U.S.C. § 3571(c)(5). *Id.* at 4. The Government takes no position on the remaining, purely factual objections concerning corporate structure, sales, and employee details, and defers to Defendants to correct the record on those points. *Id.* at 1 n.2.

**E.      The Need to Avoid Unwarranted Sentence Disparities (18 U.S.C. § 3553(a)(6))**

Despite a thriving marine industry in the United States, counsel is unaware of any other Lacey Act cases involving a foreign yacht manufacturer's importation of finished vessels containing Myanmar teak into the United States. Both Defendants are being sentenced together, pursuant to the same Plea Agreement. Defendants' proposed sentence treats both Defendants consistently with one another and with the parties' joint recommendation.

**F.      The Need to Provide Restitution to Any Victim of the Offense (18 U.S.C. § 3553(a)(7))**

Pursuant to § 8B1.1 and the Plea Agreement, no restitution or other remedial relief is owed in this matter. This is consistent with the Draft Presentence Investigation Report, which identifies no victims of this Title 16 offense. [D.E. 22] ¶ 28. SIL has nonetheless already paid a £358,760.60 penalty to the UK Crown Court, arising from a related course of conduct involving a different, broader set of timber imports. [D.E. 22] ¶¶ 25-26. Defendants have also undertaken the remediation measures described above.

13

## IV.   CONCLUSION

For the reasons stated herein, and in Defendants' respective Objections to the Draft Presentence Investigation Report incorporated by reference, Defendants respectfully request that this Honorable Court impose the sentence agreed upon in the Plea Agreement. That sentence is a $200,000 fine, already paid; not more than five (5) years of probation; and continued implementation of the Compliance Plan. Defendants further request that the Court determine any applicable fine under § 8C2.10 and 18 U.S.C. §§ 3553, 3571, and 3572. This request is consistent with Defendants' Objections and with the Government's Omnibus Response.

Respectfully submitted,

Dated: August 13, 2026

LEWIS BRISBOIS BISGAARD & SMITH LLP

/s/  *Kenneth J. Joyce*
Sean P. Shecter (FBN 1032813)
Sean.Shecter@lewisbrisbois.com
Aviva.Pasternak@lewisbrisbois.com
Kenneth J. Joyce (FBN 986488)
Ken.Joyce@lewisbrisbois.com
Kimberly.Hill@lewisbrisbois.com
Maurice A. Johnson (FBN 1039857)
Maurice.Johnson@lewisbrisbois.com
Tel:    954.728.1280
Fax:    954.678.4090

*Attorneys for Defendants Sunseeker International Limited and Sunseeker USA Sales Co, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of August 2026, I electronically filed under seal the foregoing with the Clerk of the Court using the CM/ECF system. A courtesy copy was emailed to the attorneys of record for the U.S. Department of Justice and the U.S. Probation Office.

*/s/ Kenneth J. Joyce*
Kenneth J. Joyce

14